IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANGELLA EVERETT,
   Plaintiff,

v.

NOVO PLATFORM INC.,
   Defendant.

Civil Action No. _____



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 0 2025

CLERK, U.S. DISTRICT COURT
By_____
   Deputy

4-25CV1312-0

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Angella Everett ("Plaintiff"), a woman located in Tarrant County, Texas, appearing in her proper person, brings this Complaint against Novo Platform Inc. ("Defendant" or "Company") and alleges as follows:

## I. INTRODUCTION

1. This is a civil action for damages, equitable relief, and declaratory judgment arising from Defendant's sustained pattern of unlawful employment practices—including disability discrimination, retaliation, hostile treatment, wrongful demotion, and obstruction of Plaintiff's rights and access to evidence.

2. Plaintiff brings this action under:
  - The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.
  - Title I of the Civil Rights Act of 1991
  - Texas Labor Code § 21.051 et seq.
  - 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act)
  - Common law claims for breach of implied contract, promissory estoppel, and constructive fraud

3. Plaintiff seeks back pay, front pay, declaratory and equitable relief, and any further remedy this Court deems just and proper.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.
5. Supplemental jurisdiction over Texas state law claims is proper under 28 U.S.C. §

1367.

6. Venue is proper under 28 U.S.C. § 1391(b)(2), as all acts and omissions giving rise to these claims occurred in Fort Worth, Texas (Tarrant County), where Plaintiff was located and performed her work.

III. PARTIES

7. Plaintiff Angella Everett is a woman located in Tarrant County, Texas.
8. Defendant Novo Platform Inc. is headquartered in New York and conducts business in Texas, including employing remote workers in this District.

IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) in 2024.
10. The EEOC issued a Right to Sue letter on August 18, 2025. This action is timely filed within 90 days of receipt.

V. STATEMENT OF FACTS

11. Plaintiff began her engagement with Defendant as a contractor through Justworks in October 2021 and was hired full-time in November 2022 as an Escalation Specialist (S-4).
12. In 2023, Compliance Manager Lori Lawhorn expressed interest in moving Plaintiff into Compliance. Lia Mebane, Plaintiff's lead, recommended her and shared her qualifications with Lawhorn. This is corroborated by internal communications.
13. Plaintiff repeatedly disclosed her disabilities and accommodation needs to HR Generalist Janet Hefferan. She possesses recordings of relevant meetings evidencing her requests and the employer's disregard.
14. On January 17, 2024, Plaintiff was demoted from S-4 to S-3 under duress. This followed her complaints and concerns about internal practices. There was no performance improvement plan or corrective counseling prior to the demotion. Plaintiff had never been formally written up at any time before this forced demotion.
15. Plaintiff's offer letter, signed November 3, 2022, promised a grant of 500 equity shares. No shares were ever issued or vested. Plaintiff was never informed of any Board denial or change in her eligibility.
16. In March 2024, Plaintiff went on approved mental health leave and was granted short-term disability (STD) benefits through MetLife. She later transitioned into long-term disability (LTD), which remained active through her termination.
17. On November 15, 2024, while still on LTD leave, Defendant terminated Plaintiff and simultaneously executed remote lockouts on her company-issued MacBook and Chromebook. Plaintiff believes this action was taken to suppress or destroy evidence supporting her claims, as other employees were allowed to retain access and no

explanation was given.

18. That same day, Plaintiff was presented with a severance offer by Janet Hefferan. The offer demanded Plaintiff waive all claims, including her EEOC charge, and hold Novo harmless. She declined. The link later expired, but email records confirm the attempt.

19. Defendant also demanded return of all equipment as a condition of severance. Carrington Miller, a named witness in Plaintiff's EEOC filing, was terminated after Plaintiff and was allowed to keep his company-issued device. This disparity in treatment supports pretext and obstruction.

20. In early February 2024, Plaintiff was ill and provided two physician's notes excusing her absences. Despite this, she was harassed by HR and team lead Madeline Eckhart and formally disciplined. At that time, Defendant maintained an unlimited PTO policy, which was selectively ignored in Plaintiff's case.

21. Plaintiff and at least one colleague received written threats of harm while handling customer-facing support tickets. Plaintiff worked remotely, yet Defendant failed to involve law enforcement, notify authorities, or offer counseling or any safety response despite full awareness of the threats.

22. During her tenure, Plaintiff was assigned to Compliance-related functions, and her name appeared on tickets routed to the Compliance group. Despite this, Defendant later told Plaintiff she was "unqualified" for Compliance roles—contradicting documentation of her active participation.

23. These actions caused Plaintiff severe mental and emotional harm and contributed to an intolerable work environment amounting to constructive discharge.

## VI. CAUSES OF ACTION

Count I – Disability Discrimination (ADA, Texas Labor Code § 21.051)
Count II – Failure to Accommodate
Count III – Retaliation for Protected Activity
Count IV – Hostile Work Environment
Count V – Breach of Implied Contract (Equity Promise)
Count VI – Promissory Estoppel (Unvested Stock)
Count VII – Constructive Fraud / Misrepresentation
Count VIII – Declaratory Judgment (28 U.S.C. §§ 2201–2202)
Count IX – Spoliation / Obstruction of Evidence

## VII. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Enter judgment in her favor on all counts;
B. Award front pay and back pay, with interest;
C. Award compensatory and consequential damages;

D. Declare Plaintiff's legal rights regarding promised equity compensation;

E. Order an equitable accounting of all equity-related records and rights;

F. Award restitution or impose a constructive trust over any withheld compensation or vested interests;

G. Award costs and attorney's fees as provided by law;

H. Grant any other relief this Court deems just and proper.

All rights reserved. Without prejudice.

By: *Angella: Everett*

———————————————————

ANGELLA EVERETT

Appearing in propria persona

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff  Tarrant County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  New York County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
In Propria Persona - Angella Everett
c/o 1209 N. Saginaw Blvd. Ste. G #145
Saginaw, Texas [76179]

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Americans with Disabilities Act, Civil Rights Act of 1991, Texas Labor Code chapter 21

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE  11/16/2025

SIGNATURE OF ATTORNEY OF RECORD  Angella: Everett, In Propria Persona

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**EXHIBIT INDEX**

Exhibit 1: EEOC Charge of Discrimination (Filed 2024)

Exhibit 2: EEOC Dismissal and Right-to-Sue Letter (August 18, 2025)

Exhibit 3: Novo's Position Statement to EEOC

Exhibit 4: Plaintiff's Rebuttal to Novo's Position Statement

Exhibit 5: Signed Offer Letter – Escalation Specialist Role (S4 Level) and Equity Terms

Exhibit 6: Screenshot Showing Plaintiff's Demotion to S3 (January 31, 2024)

Exhibit 7: Screenshot Confirming S4 Escalation Specialist Title (December 18, 2023)

Exhibit 8: MetLife Short-Term Disability Claim Form

**Exhibit 1**

EEOC Charge of Discrimination (Filed 2024)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC FEPA | 520-2024-02399 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

Compliance at some point. There was a woman (Indian) working in the Compliance team as an analyst who left the company to pursue an outside opportunity in winter of 2023. Despite my constant inquiries about moving to that department, I was never offered the position I was promised or an interview. It is my understanding (as recent as March 2024 when I went on STD leave) that interviews were being held to replace that Compliance analyst position and that all individuals interviewed were Indian. In the beginning of 2024, my team was sent an email that we were being placed back on phones and if we didn't like it then we can take a month's severance and quit. This was a difference in treatment I witnessed in 2023 when three younger female employees who the Respondent tried to put back on phones, refused and instead of being reprimanded, they were promoted that same year. We were placed back on phones despite being told that we would never have to go back on phones after our promotions to the Escalation dept. I then made a complaint of our team being placed back on phones and not receiving the promotion we were promised. Afterwards, I faced retaliation, and I was written up for not being on the phones the first day that change went into effect but not only had I not received the headset they'd mailed out yet, but I'd also called out sick that morning shortly after clocking in for the day. I was feeling very ill then called off completely a short time later the same morning. I was ill for several days after and received emails from Madeline Eckhart and Janet Hefferan threatening punishment/possibly termination for not being on phones and for not being at work. I submitted a sick note during my absence and an additional sick note upon my return to work, per their new policy that employees in our department must present a doctor's note upon returning to work if they are absent three or more days. I was still marked as "unexcused" and written up (I had never once during my time with the company ever been disciplined or written before. This was retaliatory and I believe they were trying to pad my HR file and possibly terminate me as quickly as possible). I tried to appeal this in a meeting with HR generalist, Janet Hefferan, and she said it would stand and Madeline Eckhart backed that decision. I was not provided with any options to file an appeal or grievance since I didn't agree with the action, nor did we have an HR director or a handbook with written policies to refer to. I also brought this to my lead Lia's attention, and she told me there was nothing to be done if they chose to write me up. They then enacted a rule for my dept. which restricted the amount of PTO and sick days we could take and created a point system which did not apply to any other dept. in the company. I also felt discriminated against based on my disability as when I informed Lia of my disability she stated, "What makes you people think that just because you are sick that the company should pay for it?" This gives me fear of retaliation when I return from short term disability leave.

I believe that I have been discriminated against based on my age in violation of the Age Discrimination in Employment Act of 1967, as amended, based on my disability in violation of the Americans with Disabilities Act of 1990, as amended and based on my race and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Angella Everett**<br><br>**07/23/2024**<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**Exhibit 2**

EEOC Dismissal and Right-to-Sue Letter (August 18, 2025)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

San Antonio Field Office
5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229
(210) 640-7530
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/18/2025

**To:** Angella Everett
P.O. Box 12108
Austin, TX 78711

Charge No: 520-2024-02399

EEOC Representative and email:    Esther Ferreira
Investigator
esther.ferreira@eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2024-02399

On behalf of the Commission,

**Esther Ferreira**
Digitally signed by
Esther Ferreira
Date: 2025.08.18
16:19:11 -05'00'

*for*    Norma J. Guzman
Field Director

**Cc:**
Max Hutchison
123 William St, Fl 19
New York, NY 10038

Please retain this Notice for your records.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Antonio Field Office**

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
San Antonio Direct Dial: (210) 640-7530
FAX (210) 281-2522
Website: www.eeoc.gov

August 7, 2025

Angella Everett
P.O. Box 12108
Austin, TX 78711

Subject:    Dismissal of Charge
           EEOC Charge No.: 520-2024-02399
           Respondent: Novo Platform, Inc.

Dear Ms. Everett,

The purpose of this letter is to inform you that the EEOC has concluded its investigation of the above referenced charge of employment discrimination. The evidence currently on file does not support your claims of discrimination based on age, race, disability and retaliation. The evidence on file supports that the individual you allege promised you a promotion does not have hiring authority and therefore was not able to grant that employment decision. In addition, there is no evidence on file to support that the proper member of management with hiring authority offered you a promotion and then failed to promote you. A referral for a position is not congruent with a job promotion offer. There is no evidence on file to support that the alleged harassment by another employee was severe or pervasive, as required by the law. There is no evidence on file to support that you reported the alleged harassment by another employee, and that the Respondent failed to take corrective action. There is no evidence on file to support that you were subjected to different terms and conditions of employment than employees outside of your protected classes. The changes in duties regarding calls was placed on your entire team, including members outside of you protected age, race, and disability classes. There is insufficient evidence on file to support that you were subjected to employment harm solely because of discrimination or retaliation.

**There is no evidence on file to support that Respondent engaged in any discriminatory or retaliatory behavior in violation of laws covered by the EEOC. Consequently, the EEOC is dismissing this case, and no further action will be taken.**

We fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions. Our final determinations must comport with our interpretation of the available evidence and use of our resources.

The Dismissal and Notice of Right to Sue will explain the right to pursue the matter in court.  If you want to pursue the charge, you may do so by filing in Federal District Court within 90 days of receipt of the Notice. *If you do not file a lawsuit within the required 90-day period, Charging Party's right to file a lawsuit in this matter will expire and cannot be restored by EEOC.*

Sincerely,

Esther Ferreira
Federal Investigator

**Exhibit 3**

Novo's Position Statement to EEOC

*Legally Privileged and Confidential*                    Novo Platform Inc.

# Position Statement of Novo Platform Inc.

## Equal Employment Opportunity Commission

## Charge: 520-2024-02399

### I. Introduction

This Position Statement is provided in response to the Charge of Discrimination (the "Charge") filed by Angella Everett ("Charging Party").  Novo Platform Inc. ("Novo" or "Respondent") has reviewed the Charge, and Novo denies that it unlawfully discriminated against the Charging Party based on her race, age, or disability status.  Novo further denies that it unlawfully retaliated against the Charging Party in any way.

Novo provides a complete response to the Charging Party's allegations below.

### II. About Novo

Novo Platform Inc. is a financial technology company that partners with banks to provide business banking solutions for small businesses. Novo employs a diverse workforce and is committed to creating an inclusive and equitable workplace for all employees.

Novo adheres to the requirements of all anti-discrimination laws and provides equal opportunities for its employees. Novo's policies and procedures are designed to ensure compliance with all applicable laws, including those related to non-discrimination (please see **Exhibit 1: Code of Conduct**). All new hires also complete harassment and discrimination prevention training.

### III. Novo's Response to Specific Allegations

1. **Allegation:**  "I (Hispanic/Pacific Islander, 42) began working for the above Respondent eventually becoming an Escalation Specialist and Subject Matter Expert under the supervision of Customer Success Supervisor Lia Mebane (Hispanic) and her boss, Manager Madeline Eckhart (White)."

   **Response:**  Novo admits that Charging Party began working as an Escalation Specialist and Customer Support Specialist under the supervision of Customer Success Supervisor Lia Mebane ("Mebane") (Hispanic & African American, 49) and her boss, Manager Madeline Eckhart ("Eckhart") (White, 28).

*Legally Privileged and Confidential*                                   Novo Platform Inc.

2. **Allegation:**  "During my employment, I was given more responsibilities without a pay increase."

   **Response:** Deny. The Charging Party's responsibilities evolved in line with the expectations outlined in her job description, which included working on specialized projects as needed, particularly as ticket volume decreased. While additional tasks were assigned, Novo adheres to a consistent policy regarding performance reviews and compensation adjustments. Reviews are conducted twice yearly, with eligibility for pay increases only after a full year of employment. The Charging Party, who began employment on November 7, 2022, received a $0.50 per hour pay increase on October 1, 2023, in accordance with this policy.

3. **Allegation:**  "I was part of a team of four and we were all Hispanic.  Lia would make comments towards us and referred to us as "you people and "people like you."

   **Response:** Deny. Mebane, who is Hispanic and African American, did not make these comments.  Moreover, Novo employees are expected to foster respectful workplace conduct.  As part of this expectation, Novo's Code of Conduct requires all employees to report misconduct (please see **Exhibit 1: Code of Conduct**). Novo does not tolerate retaliation against anyone who makes a good faith report of suspected misconduct. However, the Charging Party did not report these alleged comments to Human Resources or anyone further up the management chain at any time. Notably, Novo has not received any similar complaints from other employees on the Charging Party's team, two of whom belong to the same protected class as the Charging Party (Hispanic), and one of whom is African American. It is also worth noting that when the Charging Party first joined Novo, she listed Mebane, identified as a friend, as her emergency contact. In her performance review self-assessment for September 2023, the Charging Party had this to say about Mebane:

   > *I have truly enjoyed being a part of the CS Escalations Team, specifically since Lia Mebane stepped in as Team Lead earlier this year. She has been amazingly supportive and really did breathe new life into this team, which has greatly improved morale and performance. The current team we have is more like a work family where we uplift and support each other to do the best job possible for Novo and for our account holders.*

4. **Allegation:**  "I was regularly told that I was going to get promoted and join the compliance department and Lia often referred to me/directed others to me for assistance as the "Compliance liaison".  I was even added to group emails that included me as part of the Compliance team as I regularly performed Compliance duties.  My three other team members were promised moves to different departments, which never

*Legally Privileged and Confidential*                                        Novo Platform Inc.

came to fruition for them either.  In early summer 2023, I was tapped for a move to the Compliance team by Lori Lawhorn."

**Response:** Neither the Charging Party nor her team members were promised moves to different departments.  While Novo encourages employees to discuss career growth with their managers, lateral moves and promotions are based on the company's needs and the availability of positions. In the Charging Party's case, no one with the authority to offer a promotion to the Compliance team made such a promise. Lawhorn, a Regulatory Compliance Analyst, was not a manager at Novo and did not have the authority to promote or transfer the Charging Party. Furthermore, to the best of Novo's knowledge, the Charging Party was not qualified to work in Compliance and had no prior substantial experience in the Compliance field, aside from a few incidental Compliance-related interactions during her role as a Customer Support Specialist.

5. **Allegation:**  "When I followed up with [Lori Lawhorn] a short time later, she expressed that upper management was not going to support the move at that time as they would not approve my salary increase to make that move.  I was told off the record that they were really looking to hire Indian employees so they could pay them less.  I continued to to [sic] work closely with the Compliance team and regularly expressed my interest in moving to that team.  It was common knowledge amongst my team, my lead and higher management, and adjacent teams that I would be moving over to Compliance at some point."

**Response:**  Deny. While the Charging Party might have been under the impression that she was moving to the Compliance team, no person with authority to promote to the Compliance team ever promised the Charging Party a promotion.  Moreover, the Charging Party's allegation that Novo hired Indian employees to pay them less is false. With regard to a move being common knowledge, that is inaccurate; there were no formal plans or discussions regarding the Charging Party's transition to the Compliance team.

6. **Allegation:**   "There was a woman (Indian) working in the Compliance team as an analyst who left the company to pursue an outside opportunity in the winter of 2023. Despite my constant inquiries about moving to that department, I was never offered the position I was promised or an interview.  It is my understanding (as recent as March 2024 when I went on STD leave) that interviews were being held to replace that Compliance analyst position and that all individuals interviewed were Indian."

**Response:**  Novo denies that the Charging Party was promised any position. Novo's recruitment practices, including hiring for roles in its India offices, are driven by

*Legally Privileged and Confidential*                                    Novo Platform Inc.

legitimate business needs and are not influenced by race. Our India offices are integral to Novo's operations. We began hiring in India in 2016, before expanding employment to the U.S. in 2018.

The majority of our Compliance and Banking Operations team is based in India to align with the company's strategic and operational needs, allowing it to leverage the region's vast talent pool. When an employee departs, Novo evaluates the need to backfill the role, and typically the position is filled in the office closest to the departing employee.

We believe the Charging Party is referring to Riya Kalyani ("Kalyani"), who held the title of "Process Lead - Compliance Testing" and left Novo in November 2023. This position was backfilled by Harshita Bhaiswari ("Bhaiswari"), who joined as "Senior Process Lead." Both Kalyani and Bhaiswari were based in our Gurgaon office in India. For this role, Novo sought candidates with 3-6 years of experience in financial institutions. Bhaiswari had the required experience and had worked at regulatory bodies and fintech companies, making her a strong fit for the position.

7.  **Allegation:** "In the beginning of 2024, my team was sent an email that we were being placed back on phones and if we didn't like it then we can take a month's severance and quit. This was a difference in treatment I witnessed in 2023 when three younger female employees who the Respondent tried to put back on phones, refused and instead of being reprimanded, they were promoted that same year. We were placed back on phones despite being told that we would never have to go back on phones after our promotions to the Escalation dept. I then made a complaint of our team being placed back on phones and not receiving the promotion we were promised."

    **Response:** The Escalation team was created to handle specific tasks required by Novo's partner bank, and phone coverage, a key aspect of the team's role, was never removed from the Escalation team job description (please see **Exhibit 2: ES/Enhancement Key Responsibilities**).

    The renewed emphasis on phone duties in 2024 was based on Novo's operational needs to support its growing customer base as the business grew. The Charging Party, together with the rest of her team, was informed of Novo's focus toward phone and ticket support for Novo's customers on January 18, 2024 (please see **Exhibit 6: Customer Support & Success Merger**).

    The allegation that three other employees had previously refused phone duties is false. No employees were promoted as a result of refusing to perform their assigned duties, including phone work.

*Legally Privileged and Confidential*                                          Novo Platform Inc.

8. **Allegation:** "Afterwards, I faced retaliation, and I was written up for not being on the on the phones the first day that change went into effect but not only had I not received the headset they'd mailed out yet, but I'd also called out sick that morning shortly after clocking in for the day. I was feeling very ill then called off completely a short time later the same morning. I was ill for several days after and received emails from Madeline Eckhart and Janet Hefferan threatening punishment/possibly termination for not being on phones and for not being at work. I submitted a sick note during my absence and an additional sick note upon my return to work, per their new policy that employees in our department must present a doctor's note upon returning to work if they are absent three or more days. I was still marked as 'unexcused' and written up (I had never once during my time with the company ever been disciplined or written before. This was retaliation and I believe they were trying to pad my HR file and possibly terminate me as quickly as possible)."

**Response:** Deny. After receiving the January 17, 2024, email, the Charging Party failed to fulfill her required phone support duties. Following this, she became uncommunicative and took sick leave from January 18-22 and February 1-7.

Eckhart issued a final warning on February 1, 2024, for failure to comply with her assigned responsibilities (see **Exhibit 3: Final Warning Email**). Further absences without providing notice to Novo led to additional correspondence from our Human Resources ("HR") team (see **Exhibit 4: Continued Absence Email**). After several days of unexcused absences in early February, with no communication, the Charging Party finally contacted HR on February 8, 2024 inquiring into taking a leave of absence.

On February 12, 2024, Novo's HR team sent the Charging Party forms to begin the ADA reasonable accommodation process, should she require accommodations. However, she did not complete or return the necessary documentation. Additionally, Novo provided her with information regarding Short-Term Disability benefits (see **Exhibit 5: Reasonable Accommodation Request Email** and **Short-Term Disability Information Email**).

The Charging Party took sick leave on February 16, and again on March 4. She also took PTO on March 1 and again from March 6-11, after which she did not return to work. This pattern of behavior violated our Attendance and Punctuality Policy (see **Exhibit 7**).

The Charging Party's claim that she was unable to complete her work due to not receiving a headset is unfounded. Novo ensures that all employees are properly equipped to perform their duties. The Charging Party had been engaging in work

*Legally Privileged and Confidential*                                    Novo Platform Inc.

related calls prior to this date and therefore had appropriate equipment to perform all duties, regardless of any alleged delays in receiving upgraded equipment. Employees use the same equipment for customer calls as they do for internal meetings with colleagues and managers, ensuring they can effectively carry out their responsibilities.

9. **Allegation:** "I tried to appeal this in a meeting with HR generalist, Janet Hefferan, and she said it would stand and Madeline Eckhart backed that decision. I was not provided with any options to file an appeal or grievance since I didn't agree with the action, nor did we have an HR director or handbook with written policies to refer to. I also brought this to my lead Lia's attention, and she told me there was nothing to be done if they chose to write me up. They then enacted a rule for my dept. which restricted the amount of PTO and sick days we could take and created a point system which did not apply to any other dept. in the company."

    **Response:** Novo admits that it did not provide the Charging Party with a chance to "appeal" her write up. However, Novo was not required to do so.

    Moreover, customer-facing employees, such as those in Customer Support (CS), are subject to specific PTO policies due to the real-time nature of their roles. Unlike other positions where tasks can sometimes be completed flexibly, CS employees must respond to customers during designated operating hours. When a CS employee takes PTO, their work is redistributed to other team members to ensure that customer needs are met without interruption. As a result, careful coordination is required to maintain service levels during periods of employee absence.

10. **Allegation:** "I also felt discriminated against based on my disability as when I informed Lia of my disability she stated, 'What makes you think that just because you are sick that the company should pay for it?' This gives me fear of retaliation when I return from short term disability leave."

    **Response:** Deny. Mebane did not make this comment to the Charging Party. Furthermore, in accordance with our Code of Conduct, employees who report concerns in good faith are protected from any form of retaliation.

11. **Allegation:** I believe I have been discriminated against based on my age in violation of the Age Discrimination in Employment Act of 1967, as amended, based on my disability in violation of the Americans with Disabilities Act of 1990, as amended and based on my race and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Legally Privileged and Confidential*                                    Novo Platform Inc.

**Response:** Deny. It is possible Charging Party subjectively believes Novo discriminated against her on the basis of her age, disability, and race, and believes that Novo retaliated against her. However, there is no evidence to support that subjective belief.

## IV. Novo's Policies

Novo has comprehensive anti-discrimination and anti-retaliation policies, as outlined in the Code of Conduct and included as **Exhibit 1** that all employees agree to prior to commencing work at Novo. These policies have been consistently applied in the case of the Charging Party, and any disciplinary actions taken were based on documented performance issues and failure to comply with company policies.

## V. Legal Analysis

Novo denies that it unlawfully discriminated or retaliated against the Charging Party. All actions taken were in compliance with federal and state employment laws and were based on legitimate business needs and employee performance.

### A.  Novo Did Not Discriminate Against Charging Party on the Basis of Race

To establish a prima facie case of racial discrimination, Charging Party must show: (1) she belongs to a protected group, (2) she was qualified for the position held or sought, (3) she suffered an adverse employment action, and (4) she was replaced by someone outside the protected class or she was treated less favorably than others similarly situated or otherwise show that she was subjected to adverse treatment due to her race. *See Glover-Dorsey v. Univ. of Texas Med. Branch at Galveston, Texas,* 147 F. Supp. 2d 656, 663–64 (S.D. Tex. 2001) (citing *Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.1998)).   Novo assumes for the purposes of this Position Statement only that Charging Party is Hispanic/Pacific Islander. However, Charging Party fails to establish the remainder of her *prima facie* case of race discrimination.

The Charging Party makes a number of allegations of race discrimination. First, Charging Party alleges that Mebane made discriminatory statements against Charging Party and her team members, who Charging Party says were also Hispanic, by referring to Charging Party and her team as "you people" and "people like you." To begin with, it is simply illogical to conclude that Mebane, who is herself Hispanic, would engage in any discrimination against Charging Party or other Hispanic employees because of their membership in that same protected class. Not only did Mebane not make these statements, but these statements do not amount to an adverse action against Charging Party. Second, Charging Party alleges she was passed up for a position on the Compliance team due to her race. As a preliminary matter, as outlined above, Charging Party was not promised such a position by anyone with authority to make such a promise. Additionally, Novo denies Charging Party's allegations that Novo was

*Legally Privileged and Confidential*                                           Novo Platform Inc.

only hiring Indian employees so that Novo could pay them less. With respect to her allegation that she was not offered or interviewed for an open position on the Compliance team, Novo believes Charging Party is referring to the position previously occupied by Riya Kalyani ("Kalyani"),[1] who left employment with Novo in November 2023. Kalyani's position was backfilled by Harshita Bhaiswari ("Bhaiswari"), who, like Kalyani, was also based in Novo's Gurgaon office in India. When filling this role, Novo sought candidates with 3-6 years of experience in financial institutions. Bhaiswari had the required experience and had worked at regulatory bodies and fintech companies, making her a strong fit for the position. Thus, there is no evidence that Charging Party was more qualified to fill Kalyani's position or that Novo's decision not to hire Charging Party for this role was in any way due to her race.

Furthermore, available positions—including the one the Charging Party appears to reference—are posted internally at Novo, as well as on external platforms such as LinkedIn. The Charging Party did not submit an application for this or any such positions.

### B.  Novo Did Not Discriminate Against Charging Party on the Basis of Disability

To state a claim of discrimination on the basis of disability, Charging Party must show, (1) she is disabled; (2) she is qualified for the job; (3) she was subjected to an adverse employment action on account of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). Charging Party is unable to establish any of the prongs of her prima facie case.

First, as a threshold matter, Novo does not admit that Charging Party is an individual with a disability under the ADA. A disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; a record of such impairment; or being regarded as having such an impairment." *Id.* (citing 42 U.S.C. § 12102). To determine whether an individual is substantially limited in a major life activity, courts consider: In determining whether an individual is substantially limited in a major life activity, courts should consider: "(I) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long term impact of or resulting from the impairment." *Mueck v. LaGrange Acquisitions, L.P.*, No. SA-20-CV-00801-JKP, 2022 WL 36002, at *4 (W.D. Tex. Jan. 3, 2022), *aff'd sub nom. Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469 (5th Cir. 2023), *as revised* (Aug. 4, 2023). Here, at best, Charging Party indicated she had migraines and also strep throat, and made brief mention of a therapist (please see email dated February 23, 2024 in **Exhibit 5**). However, she does not indicate whether these things substantially limited her in a major life activity. In fact, there is no information to analyze whether or not Charging Party is substantially limited. Indeed, even when offered accommodation forms in the event that she

---

[1] Kalyani held the title of "Process Lead - Compliance Testing."

*Legally Privileged and Confidential*                                        Novo Platform Inc.

needed to utilize them, Charging Party did not fill out these forms or otherwise respond to them.

Second, Charging Party's claim that she was discriminated against because of a disability fails as a matter of law because she is unable to perform the essential functions of her position, with or without reasonable accommodation—the second prong of her *prima facie* case. In making this assessment, a court will first analyze whether Charging Party can perform the essential functions of her job without a reasonable accommodation. If so, the second question is whether the Charging Party could have performed those functions with a reasonable accommodation.

Here, it appears that Charging Party may be unable to perform the essential functions of her position without a reasonable accommodation, as evidenced by her continued absence from work and her failure to communicate with Novo regarding those absences. Indeed, Charging Party was a no-call, no-show on multiple days when she was scheduled to work, and she ignored multiple emails and phone calls from Novo inquiring about her status. Therefore, the question then becomes whether Charging Party can perform the essential functions of her job with a reasonable accommodation. Here, Novo informed Charging Party that she might be eligible for leave if she was unable to work due to illness. Novo also provided Charging Party with reasonable accommodation forms should she need them. However, Charging Party did not utilize these forms, and she applied for short term disability.

Finally, Charging Party fails to establish Novo discriminated against her because of her alleged disability. Again, there is no evidence that Novo's decision to warn Charging Party about her attendance was due to anything other than Charging Party's failure to communicate appropriately with Novo regarding her absence. Again, Charging Party was a no call, no show on multiple days that she was scheduled to work, and she repeatedly ignored Novo's attempts to contact her. Novo was well within its right to warn Charging Party that her poor attendance could result in termination of her employment. *See, e.g., Pedroza v. Autozone, Inc.*, 536 F. Supp. 2d 679, 700 (W.D. Tex. 2008) ("As a general proposition, many district courts in the Fifth Circuit have ruled that an employer's termination of an employee for violation of a neutral attendance policy is legitimate."). Simply put, even if Charging Party has a disability, which Novo does not admit, this does not excuse the Charging Party from meeting workplace expectations, either with or without reasonable accommodation.

## C. Novo Did Not Discrimination Against Charging Party Based on Her Age

To establish a prima facie case under the Age Discrimination in Employment Act, Charging Party must show: (1) she suffered an adverse employment action; (2) she was qualified for the position; (3) she was within the protected class at the time she suffered the adverse employment action; and (4) she was either (i) replaced by someone outside the protected class,

*Legally Privileged and Confidential*                                             Novo Platform Inc.

(ii) replaced by someone younger, or (iii) otherwise suffered the adverse employment action because of her age. *Goudeau v. Nat'l Oilwell Varco, LP*, 793 F.3d 470, 474 (5th Cir. 2015). Simply put, Charging Party fails to point to any adverse employment action that she suffered because of her age. Charging Party's allegation that three other employees had previously refused phone duties is false. Contrary to what Charging Party asserts, no employees younger than her were promoted as a result of refusing to perform their assigned duties, including phone work.   Moreover, to the extent Charging Party alleges that being asked to perform phone duties that were part of her job description is an adverse action, this is simply untenable.

### D.  Novo Did Not Retaliate Against Charging Party

Charging Party also alleges that Novo retaliated against in violation of Title VII of the Civil Rights Act.  However, Charging Party is unable to establish such a claim.  To establish a *prima facie* case of retaliation under Title VII, an employee must show (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 407–08 (5th Cir. 2021).

First, the Charging Party did not engage in any protected activity under Title VII. "Protected activities consist of (1) opposing any practice deemed an unlawful employment practice by [T]itle VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under [T]itle VII (the 'participation clause'). *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011).  As explained above, Charging Party never engaged in any protected activity under Title VII.  Charging Party claims Mebane made certain discriminatory statements against Charging Party and her teammates.  However, not only does Novo deny that these statements were made, but to the extent that calling a group "You people" or "People like you" is viewed as an unlawful employment practice, the Charging Party never made a complaint about any such discriminatory statements.   Furthermore, it is unclear what adverse action Charging Party claims to have suffered as a result of engaging in protected activity.  To the extent Charging Party claims she was not hired for a Compliance role because she engaged in protected activity, there is no evidence to support this claim—let alone to establish that any protected activity was the but-for reason that she was not hired for a Compliance role.

### E.   Novo Had Legitimate Nondiscriminatory Reasons for Its Actions

Even assuming Charging Party could satisfy the prima facie elements of a discrimination or retaliation claim, which she cannot, her claims should be dismissed because Novo had legitimate, nondiscriminatory reasons for its actions, which were not pretextual.

As explained above, nobody with authority to make an offer to the Charging Party promised her a position on the Compliance team.  Novo had nondiscriminatory reasons for its

*Legally Privileged and Confidential*                                        Novo Platform Inc.

hiring decisions. Novo warned the Charging Party about her absences due to Charging Party's repeated failure to respond to Novo's attempts to contact Charging Party regarding her absences. Such non-discriminatory personnel decisions are not to be second-guessed. Charging Party cannot establish that any of Novo's decisions were pretextual for unlawful discrimination. Accordingly, Charging Party's claims fail as a matter of law and should be summarily dismissed.

## VI. Conclusion

Novo adamantly denies the allegations raised by the Charging Party. Novo has acted both lawfully and in accordance with its policies and procedures. The allegations made by the Charging Party are unsubstantiated and do not reflect Novo's commitment to equal opportunity.

## VII. Attachments

1. **Exhibit 1:** Code of Conduct
2. **Exhibit 2:** ES/Enhancement Key Responsibilities
3. **Exhibit 3:** Final Warning Email dated February 1, 2024
4. **Exhibit 4:** Continued Absence Email dated February 8, 2024
5. **Exhibit 5:** Reasonable Accommodation Request Email dated February 12, 2024 and Short Term Disability Information Email dated February 23, 2024
6. **Exhibit 6:** Customer Support & Success Merger dated January 18, 2024
7. **Exhibit 7:** Attendance and Punctuality Policy

**Exhibit 4**

Plaintiff's Rebuttal to Novo's Position Statement

Response to Position Statement of Novo Platform Inc.

Response to Novo's denial in #2:

I confirm I received a $0.50 pay increase last Fall for my position as an Escalation Specialist. I did not, however, receive any additional compensation for my additional work for the additional roles I took on. Those additional roles include training the offshore Ubiquity team/providing 1:1 coaching/grading on their calls performance, my assignment as the Checks SME (subject matter expert), where Novo, Ubiquity, and MFS employees were directed to me for any assistance needed with Checks issues, provided SME-led training on Checks for Ubiquity, my assignment as a Project Team SME for the SOP Project where I was tasked with creating SOPs for Checks, Escalations, and Compliance-related tickets and functions, my assignment as the "Compliance Liaison" where Novo, Ubiquity, and MFS employees were directed to me for assistance for Compliance-related issues, training the LegalOps team on BBB complaints and legal subpoenas when the time came for them to take over those tasks (I was doing the majority of them at one point and it was very time consuming).

Response to Novo's denial in #3:

I do not see how Novo can speak on what an individual did or did not say as if they have firsthand knowledge of every conversation one could ever have. Furthermore, it is my understanding that Lia Mebane was terminated by Novo before the date that this position statement was released.

Novo references that their Code of Conduct (which Novo only provided a small snippet of as an attachment with their position statement) requires all employees to report misconduct and claims that Novo does not tolerate retaliation.

I have screenshots, for example, of abusive account holders sending threats via support ticket(s) to both myself and Carrington Miller that threaten horrendous acts such as rape and death. We reported them to our lead at the time, Lia Mebane. Lia said she forwarded the matter to upper management and no reports to authorities were made, nor was there any additional follow-up with us after experiencing that abuse while carrying out our work duties. Novo thought that little of us despite their so-called policy in their Code of Conduct that "Employees must report suspected unethical, illegal or suspicious behavior immediately." We did and nothing cme of it.

I also have screenshots of of Lia Mebane confirming to the ES Team members that after we reported them to her, she documented and reported our grievances of hostile work environment and fear of retaliation to HR. She claimed this was done before the email on 1/17/24 was sent out and nothing was done about it. My experience continued to be poor treatment, hostile work environment, threats of termination, and retaliation.

I have screenshots of a group Slack message where Madeline Eckhart is scolding me for disrespect despite the so-called "Speaking Up" policy in the Code of Conduct that states "the

company encourages all employees to ask questions and raise issues without fear of retaliation...".

The Core Values Guide even states (on page 3):

- "We are open-minded, and we like to discuss and debate thoughts, ideas, and plans to broaden and further inform our beliefs and approaches.
- We value those who speak thoughtfully, respect diversity of opinion, and listen carefully with an open mind.
- We welcome new ideas and opinions and actively seek guidance, feedback, and help from others - especially if they challenge our beliefs."

Yet that is not true in Novo's practice and treatment of employees if you have not been deemed a "favorite" worthy of their selective privilege.

Additionally, Lia Mebane and I were friends at one point, but things happen, and people do not always remain close. I enjoyed Lia and respected her as a colleague above all until she came to act in a very egotistical manner as I believe she often let her management position go to her head. She was cruel and beyond unprofessional to me and in speaking about others many times. This contributed to the hostile work environment I felt trapped in and exacerbated the mental and emotional distress I was suffering and still do.

At one point during my time at Novo before I had my significant other, I lived in a small town with just my child and was isolated from any relatives due to the location. Lia offered to have me put her down as an emergency contact so that if anything ever happened to me, at least she would be notified and could make Novo aware. I do not know what Novo is insinuating with their focused comment on the matter but there was nothing more to it.

Response to Novo's denial in #4:

This is not accurate as everyone on the ES Team was promised growth and promotions to different departments where they showed talent. It is my understanding that others outside the ES Team were also promised similar things. I have individuals who have worked for Novo willing to attest that they were promised similar, as well as the fact that it was common knowledge I was slated for a move to Compliance and that I was referred to others as the "Compliance Liaison" and was the one to go to for help with difficult ES and Compliance-related issues.

Novo claims I was not qualified yet I have screenshots showing I was listed as one of the parties in the Compliance email group (this meant that Compliance cases were sent to members in that group to be resolved). I also worked on many Compliance-related issues and was regularly contacted by the Compliance manager (Daronn Grosvenor), Lia Mebane (my direct lead), my ES teammates as well as other employees, upper management, and employees of our partner bank, MFS, for assistance and collaboration with Compliance-related matters. I also completed most of the subpoena requests and BBB complaint cases for

the greater part of 2023. I also trained the LegalOps team to take those tasks over when that responsibility was reassigned to them. If I were not qualified for any of those things, Novo would not have had me doing them, people would not have been coming to me for assistance with the understanding that I was the "Compliance Liaison", I would not have been active or in attendance for Compliance-related meetings, the Compliance manager would not have been conferring with me about anything, and I would never have been included in the Compliance email group alongside the Compliance director and manager to receive Compliance cases. I worked directly in much more than just "a few Compliance-related interactions" and I was also helping to identify, write SOPs for, and help implement solutions for fraud and ID Theft cases never seen before. I have witnesses who have worked for Novo willing to attest to that as well as supporting screenshots.

Response to Novo's denial in #5:

Please see previous paragraph (Response to Novo's denial in #4)

Response to Novo's denial in #6:

Novo's operations started in India, staff there manages about 70% of Novo's back-end support, and about 40% of Novo's employees are of Indian background. A quick Google search shows that the average annual salary for a Financial Compliance Analyst in the US is about $88,000 while the average annual salary for a Financial Compliance Analyst in India is about 900,000 rupees, or about $10,653 USD. Those figures do not make my allegation at all unbelievable. Novo is looking to save money wherever they can, and it also employs an offshore calls team, Ubiquity, based in the Philippines to save money as well.

While working for Novo, I witnessed them cut ridiculous corners that made it hard for employees to best do their jobs such as make Leads use trial versions of certain programs. Using trial versions made only certain features available to users and posed other challenges like that.

I asked the Compliance manager, Daronn Grosvenor, if I needed to pursue any kind of certification in the Compliance so that I could ask Novo for educational assistance. He said I did not need it as I learned and performed s much on the job, and I could keep studying on my own/he could assist with me continuing to learn the regulation aspects. Both Lori Lawhorn and Daronn Grosvenor expressed that they most liked my tenacity, initiative, and drive to get things done. Those qualities, along with my knowledge of Novo being a complicated product and my CS experience, were most valued and have me a different edge above an experienced analyst they could easily find based on just that degree focus. Lia also let me know that she highly recommended me to Lori, which does not match Novo's position that nobody had any knowledge of me ever being slated for a move to Compliance or that I was unqualified (*see corresponding screenshot).

Response to Novo's denial in #7:

Three female employees, Chynna, Alicia, and Chanelle (cannot recall their last names) were tapped to go back on phone duties in early 2023. It is my understanding that they adamantly refused, feeling that it would be "career suicide" to go back on phones. When Madeline was asked about this difference in treatment in the past, she simply stated that she could not force them since they did not want to be on phones nor were they issued ultimatums.

Chynna eventually quit on her own later in 2023 (allegedly to pursue her acting career fulltime), Alicia went on to enjoy a promotion to the Knowledge & Training team (K&T), and Chanelle went on to enjoy a promotion as the lead for the NorthStar team. This selective privilege is discriminatory as I was simply issued a demotion and ultimatum on 1/17/24 (via email). I noted that these young ladies were much younger than I am and treated much more favourably (I am over 40).

Response to Novo's denial in #8:

I, along with the rest of the ES Team, received the ultimatum email from Rylee on 1/17/24 and I was at work the rest of the day. I was also at work on 1/18 (Thurs.) and 1/19 (Fri.). I, along with the rest of the ES Team, attended a group meeting with HR members (Janet Hefferan and Pat Hedges) on 1/18 that was just over an hour long. I even emailed Janet & Pat a recap of the points and grievances I'd made during the meeting (I have a copy of the doc available, the emails, and recording of that meeting). Novo claims that I "became uncommunicative" yet was at work participating and communicating the 17th, 18th, and 19th.

I clocked into work on 1/22 but shortly afterward had to call off as I was assaulted in my home that morning. I was very transparent with Novo regarding my DV incident, and I was treated very poorly and even cruelly at times. This also exacerbated my emotional distress and anxiety I was suffering from. I had to move to a new place for safety reasons in a short amount of time due to that situation. Despite keeping my lead (Lia Mebane), HR generalist (Janet Hefferan), and other management members aware of my happenings and needs (such as a single day off to move with the one week required notice to take a PTO day) related to the incident, I was mistreated and given a hard time. I even submitted a lease-break letter from my DV coordinator from my local police department that outlined my assault incident and proved my move was a safety necessity. My DV situation and necessary move were treated as an inconvenience since I already approved, pre-planned PTO on the books for 3/5-11/24 which in the end, I went on short-term disability and Janet told me it was best to not return the point I submitted my application to MetLife (on 3/5/2024)

I will note that I had reached out at least twice in a Slack message (to Janet Hefferan & Lia Mebane) to keep asking about my request to take a day off the move. Janet finally responded and approved at the last minute, the day before my move-in date of 3/1. This was extremely stressful. I was having anxiety attacks and vomiting throughout the day all that week while continuing to work and waiting on the verdict of my PTO request to move. I was also still in a lot of pain from my injuries incurred from the assault.

To fully address Novo's comments from #8, the phone duties outlined in the 1/17 ultimatum email did not take effect for the ES Team right away. There were several meetings and developments that kept moving the effective date back. There was even a Phones Refresher Training on the morning of 1/30 run by Robbi. He said that we would start phones the next day, 1/31. When members of the ES Team expressed to Robbi that we had not yet received our new headsets (Lia Mebane made us aware that new headsets were ordered for us the previous week), he said we would start phones whenever we received our headsets then. We just needed to keep our lead (Lia Mebane) informed which was no problem. She wasv already aware of the headset issue.

There was also another meeting in the afternoon on 1/30 (CS Onshore Support Team Connect). Novo claims I was failing to comply with my assigned responsibilities from 1/17 on yet Madeline made no mention of this during the large group meeting on the afternoon of 1/30 nor was it mentioned earlier that morning during Robbi's Phones Refresher Training. I did not even have a headset yet!

Novo goes further to claim that no headsets were required for calls and that "employees use the same equipment for customer calls as they do for internal meetings with colleagues and managers, ensuring they can effectively carry out their responsibilities." This is not true in the least. For Google Meet video calls with colleagues and managers, employees are allowed to utilize the built-in microphone and speakers of the company-issued laptop or use personal headphones/wireless earbuds of our own. However, employees are held to strict standards when taking customer calls. We must use Novo-approved headsets as they have noise-cancelling technology, the best sound quality for the employer as well as the account holder and have an effective mute/hold function. I have individuals who have worked for Novo willing to attest to the fact that proper headsets have always been required when taking calls. During my time training Ubiquity agents, I would counsel them on the importance of a quality headset per the parameters set by Novo. I would even mark them down on their call grades if their call quality was poor and they confirmed they either did not use a proper headset or a broken one. I also have screenshots of both Janet Hefferan and Madeline Eckhart addressing the headset issue in February 2024, after the 1/17 ultimatum email was sent out to the ES Team (*please see corresponding emails).


On the morning of Thursday, 2/1, I still had not received my headset and was feeling terrible and ill. I called off completely less than an hour after Chanelle had messaged me on Slack and I let her know I did not have a headset and would not be on phones (*please see corresponding screenshot).

It turned out I had strep and was battling throat pain/high fever/severe migraines. Novo claims there was no communication at all, but I responded to an email from Janet Hefferan on 2/5/2024. I let her know I had a bad weekend, was still not doing well, needed to see the doctor again, and would reach back out when I'm feeling better and able to speak again (*please see corresponding email).

I was out sick from February 1-7 and returned to work on the 8th with two doctor's notes for HR, yet I was still mark unexcused. Madeline's "final warning" email felt very targeted and harassing (where was my first warning? I had never even been written up or disciplined before ever at this job!). Novo denies me needing a headset yet in Madeline's "final warning" email, she tells me "Regarding your headset, it was scheduled to arrive today (2/1/2024) but encountered issues delivering to your address. So Janet will be reaching out to assist".

I also have a message from Janet confirming my mailing address and stating she sent me the headset from Amazon (please see corresponding screenshots).

This as well as the continued emails from HR even after they knew I was ill, then finally marking me unexcused (despite following their new three-day doctor's note policy) was part of the retaliation and an attempt to pad my file in order to terminate me.

I do not recall missing work on March 4. I recall having a 1:1 with my Lead, Lia Mebane, that day. She was nasty and disrespectful toward me I had to end the meeting in tears. I reported this incident to Janet Hefferan during a meeting the next day, 3/5 (my last day at work before departing for short-term disability leave), and I have a recording of that meeting.

I do not recall missing work on 2/16 either but, unfortunately, I am not able to verify to be certain since I no longer have access due to being terminated by Novo while on leave.

Response to Novo's denial in #9:

Novo's Code of Conduct claims to apply to everyone and claims to practice values such as:

"No Retaliation Employees who report a concern in good faith cannot be subjected to any adverse employment action including:

• Unfair dismissal, demotion or suspension

• Unfair denial of a promotion, transfer or other employment benefit

• Bullying and harassment, either in person or online

• Exclusionary behavior

• Any other behavior that singles out the person unfairly

Equal Opportunity

The company will not tolerate discrimination based on race, color, religion, gender, age, national origin, sexual orientation, marital status, disability or any other protected class.

• Yelling at or humiliating someone


Bullying

We are committed to ensuring that our employees, our contractors and our customers work in a safe and respectful environment that is free of bullying. Bullying can include:

• Spreading malicious rumor or gossip

• Excluding or isolating someone socially

• Establishing impossible deliverables

• Withholding necessary information or purposefully giving the wrong information

•Intimidating someone

• Impeding someone's work

• Unfairly denying training, leave or prom"


The Novo I was hired at valued people, mental/overall health, work/life balance, an enjoyable work culture, sharing knowledge and ideas, respect, positive collaboration, and operating with positive ethics and morals. The current organization has eroded into a dictatorship where a few select "favorites" can frolick as tyrants, abusing any and everyone who will dare speak up when they see things wrong. Such

Anyone who tries to appeal anything, such as a write-up like mine that contradicts THEIR policy, is marked and hunted until they can be terminated in the easiest way management at Novo sees fit. They seem to enjoy the hostile work environment they have created and constantly try to pit people against each other.

A company-wide PTO and sick time policy should not cherry picked now just for a few while everyone else has to be nit-picked for it and blamed because Novo refuses to hire adequate staff so that the correct coverage is always available.

As usual, Novo tries to save a buck while continuing to abuse their employees that they deem minions.


I spoke up per Novo's Code of Conduct and have told the truth while they continue being endlessly dishonest, refusing to take any accountability for the wrongs they inflict on their employees. They have recently fired a young woman in her third trimester of pregnancy, an older woman while on FMLA sick leave, and as of 11/15, I have also been terminated while

on long-term disability. Novo absolutely engages in retaliation and discrimination, and they show no signs of changing their ways.

Response to Novo's denial in #10:

Please see first paragraph of Response to Novo's denial in #3 (page 1)

Response to Novo's denial in #11:

Novo has discriminated against me on the basis of my age, disability, race, retaliated against me, created a hostile work environment for me and others, contributed to great emotional distress I am still struggling with today.

As of November 15, 2024, Novo has terminated while on long-term disability leave. They have requested that I sign and accept a severance of $3,060 (before taxes) and hold them harmless from all charges and claims, including this EEOC case.

I will absolutely not be participating in that, and this just further strengthens my position that Novo has discriminated against me and now further retaliated against me in the form of this termination while on leave as punishment for pursuing this EEOC case and telling the truth about them.

**Exhibit 5**

Signed Offer Letter – Escalation Specialist Role (S4 Level) and Equity Terms

DocuSign Envelope ID: 115FF85C-F78A-42E7-9BAA-18DE7C27DAB4

# NOVO PLATFORM INC.

**November 3, 2022**

**aa.everett@hotmail.com**
*VIA ELECTRONIC MAIL*

Dear **Angel,**

Novo Platform Inc., a Delaware corporation (the "**Company**"), is pleased to provide you with a conditional offer of employment with the Company on the terms described below.

1.    **Position.** You will start in a full-time position as **Escalation Specialist** , and you will initially report to the Company's Manager, Customer Success unless the Company designates a different individual to whom you should report. In this capacity, your title, duties, authorities, and responsibilities are set forth in the job description, each of which is subject to modification within the discretion of the Company from time to time. Your employment shall be based in [location], and occasional travel to other areas may be required in connection with your duties.

2.    **Prior Agreements.** This offer is made with the understanding and condition that you will not bring with you confidential or proprietary information belonging to any of your previous employers, that you will refrain from disclosing to the Company and/or any of its personnel, or using while employed by the Company any such confidential or proprietary information, and that you will comply with any non-disclosure obligations you may have to any of your prior employers. We ask that, if you have not already done so, you disclose to the Company any and all agreements relating to your prior employment that may affect your eligibility to be employed by the Company or limit the manner in which you may be employed. By signing this letter, you confirm with the Company that you will be under no contractual or other legal obligations that would prohibit you from performing your duties with the Company as of your start date.

3.    **Base Salary.** You will be paid a starting base salary at the gross rate of **$52,000.00** per year, which will be paid in accordance with the Company's standard payroll policies and subject to applicable withholdings and other required deductions.

4.    **Equity.** Subject to approval by the Company's Board of Directors (the "**Board**"), the Company will award you the opportunity to acquire **500** shares of the Company's Common Stock (the "**Equity**"). 25% of the Equity will vest on the 1-year anniversary of your start date with the Company and 1/48th of the Equity will vest on each monthly anniversary thereafter, subject to your continuous service with the Company through each vesting date. The purchase or exercise price per share, or per share value of the Equity, will be equal to the fair market value per share of the Company's Common Stock on the date the Equity is granted, as determined by the Board in good faith. There is no guarantee that the Internal Revenue Service will agree with this value. You should consult with your own tax advisor concerning the tax consequences associated with accepting the Equity. The Equity will be subject to the terms and conditions set forth in the Company's equity incentive plan (the "**Plan**") and the Company's standard forms of agreements under the Plan. The Company reserves the right to award the Equity as a stock option, a stock purchase right, or a restricted stock award. Subject to the discretion of the Board, you may be eligible to receive additional awards of equity from time to time in the future, on such terms and subject to such conditions as the Board shall determine as of the date of any such grant.

5.    **Employee Benefits and Policies**. As a regular employee of the Company, you will be eligible to participate in the employee benefit plans, if any, currently and hereafter maintained by the Company and generally available to similarly situated employees of the Company, subject in each case to

the terms and conditions of the plan in question, including any eligibility requirements set forth therein, and the determination of any person or committee administering the plan. Nothing in this offer letter shall be construed to require the Company to establish or maintain any specific plan or arrangement, or to prevent the Company from terminating or modifying any such plan or arrangement in accordance with its terms, except as required by applicable law. The Company may modify or terminate benefits from time to time within its sole discretion as it deems necessary or appropriate. Your employment will be subject to the Company's policies and procedures, as amended from time to time, and you agree to adhere to such policies and procedures and to otherwise act at all times within the scope of all laws, rules, and regulations applicable to the Company's business and operations.

6. **Confidential Information and Invention Assignment Agreement.** Like all Company employee, you will be required, as a condition of your employment with the Company, to sign the Company's standard Confidential Information and Invention Assignment Agreement, and a Restrictive Covenant Agreement. You agree not to bring any third-party confidential information to the Company, including that of your former employer, and that in performing your duties for the Company you will not in any way utilize any such information. In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the arbitration shall provide for adequate discovery, and (v) the Company shall pay all the arbitration fees, except an amount equal to the filing fees you would have paid had you filed a complaint in a court of law.

7. **At-Will Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause or notice. Any contrary representations which may have been made to you are superseded by this offer. This is the full and complete agreement between you and the Company on this term. As a Company employee, you will be expected to abide by the Company's rules and standards. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and the Company's Chief Executive Officer.

8. **Contingencies.** This offer may be contingent upon the veracity of the information provided by you during your hiring process, a background check clearance, satisfactory reference check, and satisfactory proof of your right to work in the United States. You agree to provide any documentation or information at the Company's request to facilitate these processes.

9. **Outside Activities.** You will devote your full working time, attention, and best efforts to the performance of your duties and to the promotion of the business and interests of the Company. You further promise that during your employment you shall not engage in any activity that: (a) creates an actual or potential conflict of interest with your duties and responsibilities for the Company; and/or (b) diverts considerable time and attention away from your employment commitment to the Company. In addition, while you render services to the Company, you will not assist any person or entity in competing with the Company, in preparing to compete with the Company or in hiring any employees or consultants of the Company.

10. **Withholding and Required Deductions.** All forms of compensation referred to in this letter are subject to all withholding and any other deductions required by applicable law.

2

11.    **Electronic Delivery.** The Company may, in its sole discretion, decide to deliver any documents related to your employment or any notices required by applicable law or the Company's Certificate of Incorporation or Bylaws by email or any other electronic means. You hereby consent to (i) conduct business electronically, (ii) receive such documents and notices by such electronic delivery and (iii) sign documents electronically and agree to participate through an online or electronic system established and maintained by the Company or a third party designated by the Company.

12.    **Miscellaneous.** This letter, along with any agreements relating to confidential information and proprietary rights or other restrictive covenants between you and the Company, set forth the terms of your employment with the Company and supersede any prior representations or agreements including, without limitation, any representations made during your recruitment, interviews or pre-employment negotiations, whether oral, written or implied. This letter will be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflict of laws principles that require the application of the law of a different jurisdiction.

*[Remainder of Page Intentionally Left Blank.]*

If you wish to accept this offer, please sign and date this letter and return it to me. You will be required to sign the Company's Confidential Information and Invention Assignment Agreement and the Company's Restrictive Covenant Agreement on or before your start date. This offer, if not accepted, will expire at the close of business on **November 8, 2022**. If you accept our offer, we would like your start date to be **November 7, 2022.**

We look forward to your favorable reply and to working with you!

Sincerely,

**NOVO PLATFORM INC.**

By:    ┌─ DocuSigned by:
       Michael Rangel
       └─ F56B119151F1432...

Michael Rangel
Chief Executive Officer

ACCEPTED AND AGREED:

Angel Everett

Sign:  ┌─ DocuSigned by:
       Ayle A. Amtt
       └─ 27C61BB3996744D...

Date:  11/3/2022

Email: aa.everett@hotmail.com

Address:  4101 W. Adams Ave. #278 Temple, TX 76504

**Exhibit 6**

Screenshot Showing Plaintiff's Demotion to S3 (January 31, 2024)

Case 4:25-cv-01312-O   Document 1   Filed 11/20/25   Page 40 of 51   PageID 40

| POSITION OVERVIEW | | | |
|---|---|---|---|
| Internal Role Title | Onshore Customer Support Specialist | External Role Title | Customer Support Specialist |
| Department | CS | Hiring Manager | Madeline Eckhart |
| Location | Wilmington, DE/ Remote | Job Level | S3 |
| Target Offer Date | | Target Start Date | Feb 2024 |
| ATS Link | N/A for now | Financial Approval? (Yes/ No) | |



| COMPETENCY CATEGORIES (company wide) | SCORECARD ATTRIBUTES (role specific) |
|---|---|
| TECHNICAL SKILLS (what is required to do the role) | • Systems Proficiency<br>  ○ Zendesk<br>  ○ Reporting<br>  ○ GSuite<br>  ○ Slack<br>  ○ JIRA<br>  ○ Asana<br>  ○ Confluence<br>• Project Management<br>  ○ Planning<br>  ○ QA Testing<br>  ○ Requirements Gathering |
| EFFECTIVENESS & OPERATIONAL SKILLS | • Adapts to Changing Priorities<br>• Attention to Detail<br>• Highly organized<br>• Efficiency Analysis for systems & process<br>• Team Coordination<br>• Group and Individual Benchmark reporting<br>• Group and Individual benchmark improvements |
| COLLABORATION & COMMUNICATION | • Work alongside Team Members to contribute to internal projects that will result in overall improvement of processes and daily operations<br>• Data Driven<br>• Flexible |



**Exhibit 7**

Screenshot Confirming S4 Escalation Specialist Title (December 18, 2023)

Case 4:25-cv-01312-O    Document 1    Filed 11/20/25    Page 42 of 51    PageID 42



**Exhibit 8**

MetLife Short-Term Disability Claim Form

# DISABILITY CLAIM FOR
# ACCIDENT & SICKNESS (A&S)/
# SHORT TERM DISABILITY (STD)/SALARY CONTINUANCE

 **MetLife**

Metropolitan Life Insurance Company

P.O. Box 14590
Lexington, KY 40512
Fax: 1-800-230-9531

Instructions for completing the claim form:
1. Complete all applicable areas of the claim form. Please print clearly.
2. Please sign – a) bottom of this page and b) Fraud Statement.
3. Faxing this claim form will expedite receipt and eliminate your need to mail it.

**New York** – Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

## Section 1: To Be Completed by the Employer

| Name of Employer **Justworks Employment Group LLC** | Group Report # **0214990** | Sub-Code # (Sub-Division) **0003** | Sub-Point # (Branch) **0004** |
|---|---|---|---|

| Address **P.O. BOX 7119 Church Street Station, New York, NY, 10008** | City | State | Zip Code | Subsidiary or Division Name |
|---|---|---|---|---|

We require a street address for our records if a P.O. Box is your mailing address
**601 W 26th St Suite 400, New York, NY 10001**

| Contact Person's Name | Phone # |
|---|---|

| Contact Person's E-mail Address | FAX # |
|---|---|

| Employee Name (First, MI, Last) | Social Security No. | Employee ID # |
|---|---|---|

| Date of Hire | Job Title | Job Class ☐ Sedentary ☐ Light ☐ Medium ☐ Heavy ☐ Very Heavy |
|---|---|---|

| Work Location Address | Work Phone # | Home Phone # |
|---|---|---|

| Supervisor Name | Supervisor's E-Mail Address | Phone # |
|---|---|---|

Is condition work related? ☐ Yes ☐ No. If yes, provide: W/C Carrier Name_____

W/C Contact Person's Name_____ Phone#_____ Worker's Comp Claim #_____

| Date Last Worked | First Date of Absence | Date Returned To Work ☐ Actual ☐ Estimated | Eff. Date of Coverage | Basic Earnings (exclusive of overtime, bonus, etc.) $_____ ☐ Hourly ☐ Weekly ☐ Bi-weekly ☐ Monthly ☐ Annual |
|---|---|---|---|---|

| Premium contributions ☐ Pre-Tax Employer_____% Employee_____% ☐ Post-Tax | Benefit Amount | Payroll Classification ☐ Exempt ☐ Non-Exempt ☐ Salaried ☐ Hourly ☐ Union ☐ Non Union ☐ Other_____ |
|---|---|---|

| Employee's Status As Of First Day Absent | ☐ Active ☐ LOA ☐ Terminated | ☐ Vacation ☐ Laid Off ☐ Retired | Hours Worked Per Week_____ ☐ Full Time ☐ Part Time Scheduled Work Week ☐ M ☐ Tu ☐ W ☐ Th ☐ F ☐ Sa ☐ Su Is work week regular_____ or variable_____ |
|---|---|---|---|

If other than Active, please explain

| If STD buy up, date enrollment card signed | LTD Coverage? ☐ Yes ☐ No |
|---|---|

| Can employee's job be modified/accommodated? ☐ Yes ☐ No If yes, please describe. | Has return to work been discussed with employee? ☐ Yes ☐ No |
|---|---|

To the best of your knowledge, indicate if the employee has filed for or is receiving income from any of the following sources:

| | Applied for | Receiving | $ Amount | Frequency | From/To Dates |
|---|---|---|---|---|---|
| Salary Continuance/Sick Leave | ☐ | ☐ | | | |
| Workers' Compensation | ☐ | ☐ | | | |
| State Disability | ☐ | ☐ | | | |
| Other (Please identify)_____ | ☐ | ☐ | | | |

Provide weekly deduction amounts, if applicable:

| | Pre Tax | Post Tax | $ Weekly Amount |
|---|---|---|---|
| Medical | ☐ | ☐ | |
| Life | ☐ | ☐ | |
| Dental | ☐ | ☐ | |
| LTD | ☐ | ☐ | |
| Other (Please identify)_____ | ☐ | ☐ | |

| Authorizing Signature | Date |
|---|---|

Page 1 of 5

A&S STD 5782 (09/18) Fs

**\*Contact MetLife at 888-444-1433 for any questions you have on completing this form.**

Some services in connection with your Disability Claim may be performed by our affiliate, MetLife Global Operations Support Center Private Limited. This service arrangement in no way alters Metropolitan Life Insurance Company's obligations to you. Services will not be performed by our affiliate if prohibited by state or local law or by mutual agreement with the Group Customer.

---

### Section 2: To Be Completed by Employee

| Name (First, MI, Last) | Social Security # | ID Number | Date of Birth (MM/DD/YY) | Gender ☐ M ☐ F |
|---|---|---|---|---|

| Address | City | State | Zip Code | E-mail Address |
|---|---|---|---|---|

We require a street address for our records if a P.O. Box is your mailing address

| Home Phone # | Marital Status ☐ Married ☐ Single ☐ Other | Federal Tax Status ☐ Married ☐ Single | Tax Exemptions (Number) | Date Disability Began |
|---|---|---|---|---|

Is your disability due to ☐ Illness? ☐ Injury/Accident? If due to injury/accident, provide Date_____, Time_____ AM ☐ PM ☐

Provide Details (Where and How)

Is this condition work related? ☐ Yes   ☐ No   Automobile Related?   ☐ Yes   ☐ No

Name of physicians/providers who have treated you for this condition within the past 12 months

| Name of Physician/Provider | Phone Number | Dates of Treatment | Physician Specialty |
|---|---|---|---|
| _____ | _____ | From _____ To _____ | _____ |
| _____ | _____ | From _____ To _____ | _____ |

Please describe what prevents you from performing the duties of your job.

---

### Section 3: To Be Completed by Attending Physician
**This report is to assist us in making a disability determination that impacts income replacement for your patient. A MetLife claim representative may telephone your office if additional information is needed**

| Patient Name | Date Disability Began | Expected Return to Work Date |
|---|---|---|

| Initial date of treatment for this disability | Most recent date of treatment | Is condition work-related? ☐ Yes   ☐ No |
|---|---|---|

Primary Diagnosis Code   _____._____ Diagnosis_____

Secondary Diagnosis Code_____._____ Diagnosis_____
Objective Findings:

| CPT4 | Procedure | Date |
|---|---|---|

If pregnancy, delivery date_____ ☐ Expected_____ ☐ Actual_____ Type of delivery_____

If patient has been hospitalized   ☐ Inpatient   ☐ Outpatient   Admitted_____ Discharged_____

Treatment Plan:   ☐ Additional Testing ☐ Medication ☐ Therapy ☐ Surgery ☐ Hospitalization ☐ Referral_____
Other (Describe)

Medications prescribed (names, dosages)

Is patient able to work with job modifications or restrictions? (please be specific):

| Signature | Specialty | Tax ID # |
|---|---|---|
| Street Address_____ City/State/Zip_____ | | Date |
| E-mail Address | Telephone # | Fax # |

Page 2 of 5

A&S STD 5782  (09/18)  Fs

 **MetLife**

Metropolitan Life Insurance Company
P.O. Box 14590
Lexington, KY 40512
Fax: 1-800-230-9531

---

**HIPAA: This Authorization has been carefully and specifically drafted to permit disclosure of health information consistent with the privacy rules adopted and subsequently amended by the United States Department of Health and Human Services pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).**

**NOTE TO ALL HEALTH CARE PROVIDERS:** The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Instructions for completing the form:
1. Complete all applicable areas of the form.
2. If you are the Authorized Representative, include a copy of the legal document(s) authorizing you to act on the Employee/Claimant's behalf.
3. Sign this form.
4. Fax or return this form as soon as possible to expedite processing of your claim – retain original for your records.

**Your refusal to complete and sign this form may affect your eligibility for benefits under your employer's disability plan.**

---

**Name of Employee (Please Print)** _____    **Date of Birth** _____

**Claim Number:** _____    **ID Number:** _____

## Authorization to Disclose Information About Me

For purposes of determining my eligibility for disability benefits, the administration of my employer's disability benefit plan (which may include assisting me in returning to work, or applying for Social Security Disability Insurance benefits), and the administration of other benefit plans in which I participate that may be affected by my eligibility for disability benefits, including but not limited to any workers compensation, employee assistance or disease management program, I permit the following disclosures of information about me to be made in the format requested, including by telephone, fax or mail:

1.   **I permit:** any physician or other medical/care provider, hospital, clinic, other medical related facility or service, pharmacy benefit administrator, insurer, employer, government agency, group policyholder, contractholder or benefit plan administrator to disclose to Metropolitan Life Insurance Company ("MetLife"), and any consumer reporting agencies, investigative agencies, attorneys, and independent claim administrators acting on MetLife's behalf, any and all information about my health, medical care, employment, and disability claim.

2.   **I permit:** MetLife to disclose to my employer or its agents acting in the capacity of administrator of its benefit plans or programs, including but not limited to, workers compensation, employee assistance, or disease management programs, any and all information about my health, medical care, employment, and disability claim.

**This Authorization to Disclose Information About Me** specifically includes my permission to disclose my entire medical record, including medical information, records, test results, and data on: medical care or surgery; psychiatric or psychological medical records, but not psychotherapy notes; and alcohol or drug abuse including any data protected by Federal Regulations 42 CFR Part 2 or other applicable laws. **Information concerning mental illness, HIV, AIDS, HIV related illnesses and sexually transmitted diseases or other serious communicable illnesses may be controlled by various laws and regulations. I consent to disclosure of such information, but only in accordance with laws and regulations as they apply to me. Information that may have been subject to privacy rules of the U.S. Department of Health and Human Services, once disclosed, may be subject to redisclosure by the recipient as permitted or required by law and may no longer be covered by those rules. Your health care provider may not condition your treatment on whether you sign this authorization.**

I understand that I may revoke this authorization at anytime by writing to MetLife Disability at P.O. Box 14590, Lexington, KY 40512-4590, except to the extent that action has been taken in reliance on it. If I do not, it will be valid for 24 months from the date I sign this form or the duration of my claim for benefits, whichever period is shorter. A photocopy of this authorization is as valid as the original form and I have a right to receive a copy upon request.

---

**Signature of Employee** _____    **Date** _____

Page 3 of 5

A&S STD 5782 (09/18) Fs

Disability Claim Statement (Continued)

## Fraud Warning:

Before signing this claim form, please read the warning for the state where you reside and for the state where the insurance policy under which you are claiming a benefit was issued.

<u>Alabama, Arkansas, District of Columbia, Louisiana, Massachusetts, Minnesota, New Mexico, Ohio, Rhode Island and West Virginia</u> – Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

<u>Alaska</u> – A person who knowingly and with intent to injure, defraud or deceive an insurance company files a claim containing false, incomplete or misleading information may be prosecuted under state law.

<u>Arizona</u> – For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of loss is subject to criminal and civil penalties.

<u>California</u> – For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

<u>Colorado</u> – It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

<u>Delaware, Idaho, Indiana and Oklahoma</u> – WARNING: Any person who knowingly and with the intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

<u>Florida</u> – Any person who knowingly and with intent to injure, defraud or deceive any insurance company files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

<u>Kentucky</u> – Any person who knowingly and with the intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

<u>Maine, Tennessee, Virginia and Washington</u> – It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

<u>Maryland</u> – Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

<u>New Hampshire</u> – A person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

<u>New Jersey</u> – Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

<u>Oregon and Vermont</u> – Any person who knowingly presents a false statement of claim for insurance may be guilty of a criminal offense and subject to penalties under state law.

Page 4 of 5

A&S STD 5782 (09/18) Fs

Disability Claim Statement (Continued)

## Fraud Warning *(continued)*:

<u>Puerto Rico</u> – Any person who knowingly and with the intention to defraud includes false information in an application for insurance or files, assists or abets in the filing of a fraudulent claim to obtain payment of a loss or other benefit, or files more than one claim for the same loss or damage, commits a felony and if found guilty shall be punished for each violation with a fine of no less than five thousand dollars ($5,000), not to exceed ten thousand dollars ($10,000); or imprisoned for a fixed term of three (3) years, or both. If aggravating circumstances exist, the fixed jail term may be increased to a maximum of five (5) years; and if mitigating circumstances are present, the jail term may be reduced to a minimum of two (2) years.

<u>Texas</u> – Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

<u>Pennsylvania and all other states</u> – Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or a statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning a fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Name of Employee (Please Print): *Angella Everett*   Social Security Number: _____

Signature of Employee *Angella Everett*   Date: *3/5/24*

Signature of Employer's Representative _____   Date: _____

Signature of Physician _____   Date: _____

A&S STD 5782 (09/18) Fs

Angella Everett

c/o 1209 N. Saginaw Blvd. Ste. G #145

Saginaw, Texas 76179

11/16/2025



Clerk of Court

United States District Court

Northern District of Texas

501 W. 10th Street

Fort Worth, TX 76102

**4-25CV1312-0**

RE: Submission of Civil Complaint – Angella Everett v. Novo Platform Inc.

Dear Clerk,

Enclosed for filing please find the following documents:

1. One original signed Complaint for Damages and Equitable Relief

2. Exhibit Index with supporting exhibits numbered and labeled

3. Civil Cover Sheet (Form JS-44)

4. Motion to Proceed In Forma Pauperis (IFP)

Please file these materials in accordance with local rules and return a file-stamped copy to me in the enclosed self-addressed stamped envelope.

If any additional information or materials are required, please do not hesitate to contact me by mail.

Thank you for your time and attention.

Sincerely,

Angella Everett , In Propria Person

Case 4:25-cv-01312-O   Document 1   Filed 11/20/25   Page 51 of 51   PageID 51

**A. Everett**
1209 N. Saginaw Blvd. Ste G#145
Saginaw, Texas [76179]


9589 0710 5270 2530 5585 15





Retail

RDC 99

U.S. POSTAGE
FCM LG ENV
OKLAHOMA CIT
NOV 17, 2025
$13.84
S2324M502529
76102

RECEIVED
N   2025
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

RETURN RECEIPT
REQUESTED

**Clerk of Court**
United States District Court
Northern District of Texas
501 W. 10th Street
Fort Worth, TX 76102